THOMAS F. McKENNA, PLAINTIFF BELOW, v. THE NORTH HUDSON COUNTY RAILWAY COMPANY, DEFENDANT BELOW.

Argued June 13, 1899—Decided November 13, 1899.

1. In an action for personal injuries alleged to have been caused whilst a passenger was attempting to board a car at an elevated railroad station, at which passengers alight and are taken on, by the negligence of the conductor suddenly starting the car before an opportunity had been afforded the passenger to fairly get on or in the car, and where the evidence is in dispute or is conflicting, the case is one for the determination of the jury both as to the negligence of the conductor and the contributory negligence of the plaintiff, and a motion to nonsuit will not be granted nor a verdict directed for the defendant.

2. When the verdict of the jury as to the amount of damages awarded is not the result or product of feeling, bias, prejudice or misconduct of the jury, although excessive, the court may reduce the same, provided the plaintiff will accept such reduction in satisfaction of the verdict.

and discharge the rule to show cause why the verdict should not be set aside; but if the plaintiff refuses to so accept such reduced amount in satisfaction of the verdict, the rule will be made absolute and a new trial ordered.'

On rule to show cause taken by the defendant.

Before MAGIE, CHIEF JUSTICE, and Justices VAN SYCKEL, GARRISON and LIPPINCOTT.

For the plaintiff, *Flavel McGee.*

For the defendant, *William D. Edwards.*

The opinion of the court was delivered by

LIPPINCOTT, J.   This is an action against the defendant for personal injuries received on the 19th day of June, 1898, by the plaintiff whilst attempting, as a passenger, to board a car of the defendant, at its elevated station at Washington street, in the city of Hoboken.

At that station there is a platform, one portion of which is about ten to twelve inches higher than the other.   On the upper portion is a small covered structure or shed in which persons waiting to take the cars are sheltered from wind and storm.   The lower portion of the platform is intended as the place for passengers to alight and get on the car.   The cars have gates on the rear, which are kept closed whilst passing from station to station on the elevated structure on which the cars are operated, and when the car comes to a station platform it stops opposite the lower portion of this platform and the gate is opened on that side to allow passengers to alight, and also to allow those who intend to do so, to enter, after which the gate is closed and the car proceeds on its way.   The platform was some twenty to thirty feet above the surface of the ground or street, and is reached by a stairway erected for the use of passengers to ascend and descend from the platform.

There are two versions of the accident to the plaintiff.

The plaintiff is a man about twenty-eight years of age. He testifies that on the day in question, at about quarter past eight in the evening, he reached the Washington street station of the elevated trolley road, to take the car of the defendant company, on his way home; that he waited on the platform until the car came; that the conductor opened the gate and four persons passed ahead of him, into and upon the platform of the car, one, the last of the four, in an intoxicated condition; that he stepped on the platform ahead and the plaintiff followed him; that he stepped with one foot on the step and one foot on the platform of the car. It, as he describes it, bolted ahead suddenly, or with a jerk, which jerked him and Shea, the intoxicated man, off the car, but Shea caught an upright stanchion beside the dashboard and held on, and fell off behind the car, on the track. The plaintiff, when the jerk of the car came, caught hold of the rail of the car with one hand and caught at the stanchion with the other, but having an umbrella in that hand, the hand could not close around the stanchion and umbrella; and a second jerk or jolt came and swung him against a portion of the elevated structure on the side of the car, and he was thrown into the street below. He testifies that when the first three passengers entered the car the conductor followed them in, ringing the bell for the car to start, leaving the gate open, and during the time he was endeavoring to hold on to the car it was moving ahead quite rapidly, and was so moving when he fell to the ground. He testifies distinctly, in his evidence, that the car stopped on the lower portion of the platform, the usual place of stopping, to take on and discharge passengers, and that is the point at which, with the gate open, he attempted to board the car.

His contention, as it will be perceived, is that as a passenger he was not given an opportunity to board the car in safety, and that was because the conductor did not exercise the care required of him by law, in affording him an opportunity to get on the car, and by reason of such negligence the defendant is liable to respond in damages for his injuries.

The evidence of the plaintiff is corroborated by other witnesses, some of whom say they saw him getting on the car whilst the gate was still open, from the lower part of the platform. There are other witnesses who testify to certain parts of the occurrences bearing upon the actions of the plaintiff and the conductor. There is some dispute in this evidence and some contradictions. Some of the witnesses testify that they saw the plaintiff attempting to enter the car, but cannot say whether at the time the gate was open or shut, or whether it was from the lower or upper portion of the platform from which the plaintiff attempted to board the car. One witness for the plaintiff testifies it was from the upper portion of the platform. Several witnesses testify to the sudden starting of the car whilst the plaintiff was getting on. Other witnesses think the gate was open and the conductor on the inside of the car when the plaintiff was getting on. Some of the witnesses who gave their observation were on the street below. This was the substance of the evidence for the plaintiff.

It is evident that the motion for nonsuit could not prevail. Under this evidence it was for the jury to determine the cause of the accident, and whether it was caused by the negligence of the servants of the defendant in operating this car to exercise that high degree of care required of them to secure the safety of the passenger in attempting to get on the car. At this point of the case no contributory negligence of the plaintiff appeared in evidence which would warrant the withdrawal of the case from the jury.

In behalf of the defendant company the evidence is that as the car came to this station it stopped at the lower platform, and the conductor opened the gate, gave notice of the destination of the car by shouting "Court house;" that three passengers entered the car, then the gate was shut and the car went ahead; that it moved slowly, passed the lower and higher portion of the platform; that as it was passing the higher portion of the platform two men, one of whom was the plaintiff, who had been sitting on a settee under the shed,

jumped up and ran diagonally across the high platform, and near the end of the station platform, and whilst the gate was shut caught hold of the car; that some one shouted, and as the car slowed up, as it passed the platform and beyond it, both fell off, the plaintiff down into the street below, and the other man at the rear of the car.

One or two witnesses swear to this state of facts, others to circumstances in corroboration of this story, others contradict the evidence of the plaintiff and the evidence of some of his witnesses. Still others attempt to impeach some of the witnesses for the plaintiff, by showing that from the points of observation held by them the occurrences could not be seen. Photographs of the place of the accident and other points were produced before the jury, and the jury were permitted by consent of the parties to view the place of accident and its surroundings.

If the contention of the defendant exhibited the occurrence in its true light the verdict of the jury should have been for the defendant, for under such circumstances clearly the plaintiff's fault caused the accident, and the conductor of the car was entirely free from negligence causing the injury to the plaintiff.

But it is evident that by the evidence a verdict could not have been directed for the defendant. The condition of the evidence at the close of the case was such that it was within the province of the jury to determine whether liability existed against the defendant company.

The conclusion reached is that the verdict was not so against the weight of the evidence as to justify this court in setting it aside. It was a case in which the jury could legitimately and reasonably conclude that liability existed. The application of the principles of numerous adjudicated cases in this state renders this conclusion unavoidable.

The rulings of the trial court in the admission or rejection of evidence do not appear to be assailed. No error is complained of in the charge of the court.

Upon the question whether the damages are excessive there

appears more difficulty. The plaintiff at the time of the accident was about twenty-nine years of age. He was a machinist, making anywhere from $47 to $75 per month. There appears to be no question but that he was seriously injured. He fell upon the pavement of the street some thirty feet below. The testimony shows that for some time whilst in the hospital he continued in an unconscious or semi-unconscious condition; that his skull was fractured; that he has suffered much intense pain; that since the accident he has been nervous, sleepless, troubled with indigestion and defective eyesight, hearing and smell, headache and loss of memory. It is shown that prior to the accident he was a healthy man. There is evidence that one of the lobes of his brain is affected, and that he is liable at any time to epilepsy and paresis. He has been and is not now able to work with near the facility and effectiveness which he did before the accident; to do the same work as before he now requires an assistant, and besides is shown favors by his former employer in his work. There is no question but that he was dangerously injured, and that for a time his condition was critical, and that his injuries are to be considered permanent. There is also some evidence that his chances of recovery are very fair, and some evidence that he has recovered to a considerable extent and that he may be again as good a man for labor as he was before. The verdict was for the sum of $8,000, but it cannot be said to be so excessive that it should be set aside as the product of feeling, prejudice or bias. At the same time the conclusion has been reached that it should not have been as large as it is.

If the plaintiff will accept, within thirty days, a reduction of the verdict to the sum of $6,000, in satisfaction of the same, the rule may be discharged, otherwise it may be made absolute.